UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
ANTHONY PONOMARENKO, :
: CASE NO. 1:10-CV-563
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. No. 31]
JOHN POTTER, Postmaster General, :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this employment discrimination case, the Defendant Postal Service moves for summary judgment on Plaintiff Anthony Ponomarenko's disability discrimination, retaliation, and constructive discharge claims. [Doc. 31.] For the following reasons, this Court **GRANTS IN PART** the Defendant's motion for summary judgment.

**I. Background**

Plaintiff Anthony Ponomarenko, a letter carrier with the United States Postal Service's Berea, Ohio office from 1985 to 2009, filed this action against Defendant John Potter, Postmaster General. [Doc. 17.] Ponomarenko suffers from obsessive compulsive disorder and from a cardiac condition, both of which he says limit his ability to perform daily activities such as walking, lifting, and using his hands. [Doc. 17 at 2.] Ponomarenko claims that beginning in May 2006, his Postal Service supervisors imposed working conditions meant to exacerbate his disabilities and refused to

Case No. 1:10-CV-563
Gwin, J.

accommodate those disabilities in violation of the Rehabilitation Act, 29 U.S.C. §§ 701-796i. Specifically, Ponomarenko says his supervisors—Lillian Flores and Jeff Blados—repeatedly denied his requests for disability accommodation. Based on this treatment, Ponomarenko filed the following Equal Employment Opportunity (EEO) grievances:

1. In July 2006, Ponomarenko filed an EEO grievance alleging discrimination and retaliation, stemming from an incident when Blados allegedly screamed at Ponomarenko for objecting that his physical disability prevented him from completing a mail route in eight hours. [Doc. 32-2 at 10.] On August 3, 2006, the Postal Service resolved the complaint through a settlement requiring that the Postal Service provide Ponomarenko with an eight-hour work day, an assigned route, and physical assistance. [Doc. 32-2 at 13.]

2. In November 2006, Ponomarenko filed an EEO grievance for retaliation and breach of settlement based on an October 21, 2006 incident in which he was asked to accept work that would bring him in excess of his eight-hour maximum or to use vacation time to supplement a shorter workload. [Doc. 32-2 at 16.] Ponomarenko alleges that he experienced chest pains and anxiety from this event. [Doc. 32 at 9.] The EEO found no breach of settlement, and Ponomarenko did not appeal that finding. [Doc. 32-2 at 1-2.]

3. In April 2007, Ponomarenko filed an EEO grievance for retaliation based on supervisor Flores's January 15, 2007 denial of Ponomarenko's request for eight hours of annual leave. [Doc. 31-3 at 7.]

4. In May 2007, Ponomarenko amended his April 2007 EEO complaint to include

Case No. 1:10-CV-563
Gwin, J.

> Blados's April 14, 2007 inquiry into whether Ponomarenko would use annual leave to cover a short workload, when that request had allegedly been made of no other employee. [Doc. 32-2 at 28.]
>
> 5. In June 2007, Ponomarenko further amended his EEO complaint to include Blados's May 29, 2007 denial of Ponomarenko's request for assistance with his mail route. [Doc. 31-4 at 20, 32-34.] Ponomarenko was given notice of final agency action on the amended EEO complaint on December 17, 2007. [Doc. 31-6 at 35-36.]
>
> 6. Ponomarenko filed an EEO complaint in March 2008 for a March 15, 2008 incident when Blados assigned Ponomarenko additional duties, allegedly in violation of Ponomarenko's prior settlement agreement with the Postal Service. [Doc. 32-2 at 42.]

Ponomarenko additionally alleges that his mistreatment by the Postal Service led to his constructive discharge in November 2008, when Ponomarenko, out of fear for his health, filed notice of his resignation. [Doc. 17 at 2; Doc. 32 at 11.]

The Postal Service contends that because Ponomarenko had not previously filed EEO complaints against the Postal Service for disability discrimination, he has failed to exhaust his administrative remedies on that claim. In addition, the Postal Service says that Ponomarenko's complaint fails to state a claim for retaliation, and in the alternative that he has exhausted his administrative remedies for only three instances of alleged retaliation and has not established a prima facie case for those claims. [Doc. 31-1.] Finally, the Postal Service argues that Ponomarenko has not exhausted his administrative remedies and cannot establish a prima facie case on a constructive discharge claim. The Postal Service thus seeks summary judgment on Ponomarenko's disability

-3-

Case No. 1:10-CV-563
Gwin, J.

discrimination, retaliation, and constructive discharge claims.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted). The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id*.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

-4-

Case No. 1:10-CV-563
Gwin, J.

as a matter of law." *Martingale*, 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Ponomarenko's Disability Discrimination Claims

The Postal Service first argues that Ponomarenko has not exhausted his administrative remedies on his disability discrimination claim, as required under the Rehabilitation Act. *See* Doc. 31-1 at 14; *Smith v. United States Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984). It says that Ponomarenko has timely exhausted only one claim, for retaliation. [Doc 31-1 at 14.] Therefore, the Postal Service says, Ponomarenko cannot show he timely exhausted any disability discrimination claim.

In response, Ponomarenko says he does not allege disability discrimination in this suit. Though Ponomarenko claimed, in his complaint, that the Postal Service engaged in "intentional discrimination in violation of the Rehabilitation Act," [Doc. 17 at 2], he now notes that "this is not a disparate treatment disability discrimination claim," [Doc. 32 at 12]. Indeed, in response to the Postal Service's motion for summary judgment, Ponomarenko repeatedly characterizes this suit as only a retaliation and constructive discharge case. [Doc. 32 at 1, 2, 12, 14.] Because Ponomarenko disavows any disability discrimination claim in this suit, the Court grants summary judgment on this issue.

### IV. Ponomarenko's Retaliation Claims

The Postal Service next argues that it is entitled to summary judgment on Ponomarenko's claim that the Postal Service retaliated against him for prior EEO activity claims. First, it says that Ponomarenko's complaint does not mention retaliation and therefore does not state a retaliation claim. [Doc. 31-1 at 7-8.] Second, the Postal Service contends that Ponomarenko has exhausted his

Case No. 1:10-CV-563
Gwin, J.

administrative remedies and filed a timely suit in just one EEO case, regarding Ponomarenko's April, May, and June 2007 EEO complaints only. The Postal Service says that any other allegations related to other incidents of alleged retaliation are thus not actionable. [Doc. 31-1 at 8-9.] Third, the Postal Service argues that Ponomarenko cannot establish a prima facie case of retaliation, because he cannot show that (1) Postal Service supervisors knew of Ponomarenko's EEO complaints, (2) the Postal Service took adverse employment actions against him, or (3) that there was a causal link between Ponomarenko's EEO complaints and the adverse employment action. [Doc. 31-1 at 18-22.] Because the Court finds that Ponomarenko had exhausted his administrative remedies for only some of his EEO complaints, and further finds that he has not established a prima facie case of retaliation for prior EEO activity, the Court does not address the Postal Service's failure to state a claim argument.

*A. Administrative Exhaustion*

The Rehabilitation Act requires that a plaintiff seeking to bring suit in federal court must first exhaust his administrative remedies. *Smith v. U.S. Postal Service*, 742 F.2d 257 (6th Cir. 1984). Federal regulations at 29 C.F.R. § 1614, which set forth a detailed scheme for administrative exhaustion of discrimination complaints under Title VII of the Civil Rights Act, apply equally to the Rehabilitation Act. 29 U.S.C. § 794a(a)(1) (remedies, procedures, and rights set forth in Title VII are available regarding complaints under the Rehabilitation Act). These regulations first require that a plaintiff consult an EEO counselor within 45 days of the alleged retaliation or discrimination. 29 C.F.R. § 1614.105(a). If the counselor cannot resolve the matter, the counselor will issue written notice of the right to file a complaint. The plaintiff must then file a formal EEO complaint within 15 days of receiving this notice. 29 C.F.R. §§ 1614.105(d)-(f), 1614.106(b). The agency with which

Case No. 1:10-CV-563
Gwin, J.

the complaint has been filed must investigate the complaint, 29 C.F.R. § 1614.108(a), and ultimately take final agency action on the complaint, 29 C.F.R. § 1614.110. Under these regulations, a plaintiff may bring an action in federal court, under the Rehabilitation Act, within (1) 90 days of notice of final agency action, 29 C.F.R. § 1614.407(a); (2) 180 days of filing his EEO complaint if the agency has not yet taken final action, 29 C.F.R. § 1614.407(b); or (3) 90 days of the EEOC's decision on the plaintiff's appeal of final agency action, or 180 days of the plaintiff's appeal if no decision has been issued, 29 C.F.R. § 1614.407(c)-(d).

Under this procedure, Ponomarenko has exhausted his claims stemming from three incidents: his April, May, and June 2007 EEO complaints, which formed a single EEOC case, USPS EEO Case No. 4C-440-0091-07. Final agency action was taken on these claims on December 17, 2009. [Doc. 31-6 at 35-36.] Ponomarenko then filed the instant suit in this Court on March 15, 2010, within 90 days of that final agency action. [Doc. 1.] However, Ponomarenko has provided no evidence that he exhausted administrative remedies on any other EEO claim. Ponomarenko filed the instant action long after the limitations period had expired on (1) the August 3, 2006 final agency action resolving his June 2006 complaint, (2) the EEO's February 2007 decision that the Postal Service had not breached its settlement agreement as alleged in Ponomarenko's November 2006 complaint, [Doc. 32-2 at 1-2], which Ponomarenko did not appeal, and (3) the Postal Service's April 2008 conclusion that it had not breached its settlement agreement as alleged in Ponomarenko's March 2008 complaint, [Doc. 32-2 at 46-47], for which Ponomarenko presents no evidence of appeal.

However, filing a timely administrative discrimination charge is not a jurisdictional prerequisite to a subsequent federal lawsuit, but instead a requirement that is subject to waiver, estoppel, or equitable tolling. *Steiner v. Henderson*, 354 F.3d 432, 434-5 (6th Cir. 2003) (citing

-7-

Case No. 1:10-CV-563
Gwin, J.

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Ponomarenko seeks tolling of the applicable limitations period for his June 2006 and November 2006 EEO claims based on the continuing violation theory. [Doc. 32 at 6.] This theory holds that where several incidents constitute an ongoing, continuous series of retaliatory or discriminatory acts, the group of incidents may be challenged in their entirety so long as at least one of the incidents falls within the limitations period. *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). The Sixth Circuit permits two types of continuing violations. The first requires some evidence of present discriminatory activity suggesting that the employer is involved in a continuing violation. The second requires proof of "a longstanding and demonstrable policy of discrimination." *Id.* at 678.

As to the first type, the Supreme Court, in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), cut back on the applicability of the continuing violation theory. It held that, in contrast to hostile work environment claims, only timely filed acts may be actionable for claims of discrimination or retaliation based on discrete acts. *National R.R.*, 536 U.S. at 114; *see also*, *e.g.*, *Russell v. Ohio Dept. of Administrative Services*, No. 07-3808, 2008 WL 5099697, at *387, *390 (6th Cir. Dec. 3, 2008) (continuing violation doctrine does not toll limitations period on untimely discrete actions). In this case, because Ponomarenko has alleged a series of discrete incidents—requests that he use vacation time, denial of his request for leave, denial of his request for assistance, assignment of additional duties—he cannot save otherwise defaulted claims by linking them to later, timely claims. As to the second type, Ponomarenko does not provide any evidence that he was subjected to a policy of retaliation against requests for disability accommodation. On their own, the incidents alleged by Ponomarenko do not rise to the level of a retaliatory policy. *Cf. Haithcock*, 958 F.2d at 679 (plaintiff "must present something more than existence of discriminatory

Case No. 1:10-CV-563
Gwin, J.

treatment, and apparent policy at post office to "get rid of appellant" unlikely to rise to level of the discriminatory policy).

Lastly, Ponomarenko seeks to save his March 2008 claim by citing *Spengler v. Worthington Cyclinders*, 615 F.3d 481 (6th Cir. 2010), for the proposition that retaliation claims brought after an EEO complaint has been filed need not be exhausted. However, on this point, the *Spengler* court merely noted that "[r]etaliation claims are typically exempt from the filing requirement because they usually arise after the EEOC charge is filed[,]" but that "this exception does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed." *Id.* at 489 (internal quotations omitted). Ponomarenko rests this suit on a series of incidents, for each of which Ponomarenko filed an EEO charge. This exception thus does not apply to Ponomarenko's case.

Because Ponomarenko has timely exhausted only his April, May, and June 2007 EEO complaints, the Court rejects claims not stemming from those complaints.

*B. Prima Facie Case*

In reviewing retaliation claims under the Rehabilitation Act, courts are guided by the familiar *McDonnell Douglas* framework. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (citing *Sherman v. Runyon*, 235 F.3d 406 (8th Cir. 2000) and applying *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), to Rehabilitation Act retaliation claims). Under this burden-shifting framework, a plaintiff must first establish a prima facie case of retaliation. To make out a prima facie case, a plaintiff must show: (1) he engaged in protected activity under the Rehabilitation Act; (2) the defendant knew of the plaintiff's protected activity; (3) the defendant then took adverse employment action against the plaintiff; and (4) a causal connection between the plaintiff's protected activity and the defendant's adverse employment action. *Gribcheck*, 245 F.3d at 550. The burden

Case No. 1:10-CV-563
Gwin, J.

then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. Finally, if the defendant offers a non-retaliatory reason, the burden shifts back to the plaintiff to prove that the offered reason was pretextual. The plaintiff may meet its burden at any stage by providing circumstantial evidence; however, the ultimate burden of persuasion remains with the plaintiff. *Gribcheck*, 245 F.3d at 550.

Here, the Postal Service does not contest that Ponomarenko engaged in protected activity by filing EEO complaints against his Postal Service supervisors. Instead, it argues that Ponomarenko cannot prove the remaining factors needed for a prima facie case. [Doc 31-1 at 18.]

First, the Postal Service contends that at least one Postal Service supervisor, Flores, was not aware of Ponomarenko's EEO activity when she denied his January 5, 2007 request for leave. [Doc. 31-1 at 18.] Responding, Ponomarenko argues that both Flores and Blados knew of his prior EEO complaints. [Doc. 32 at 10-13.] The Postal Service then says that Ponomarenko has not shown materially adverse action for some of Ponomarenko's other accommodation requests, because Ponomarenko suffered no economic harm from the alleged treatment and any mental, emotional, or physical effects were *de minimus*. [Doc. 31-1 at 19, 21.] In response, Ponomarenko argues that his supervisors knew of his disability and knew that their behavior would dangerously aggravate his condition. [Doc. 32 at 8-9.] He says he experienced "heart-pounding stress" as the result of his supervisors' behavior, which impeded his ability to work, forced him to seek medical attention, and ultimately forced him to resign. [Doc. 32 at 11, 13-14.]

Even if, taking every inference in favor of the nonmoving party, the Court were to find that Ponomarenko has satisfied these second and third prongs of a prima facie case, Ponomarenko has presented no evidence of a causal link between any of his timely EEO complaints and his

Case No. 1:10-CV-563
Gwin, J.

supervisors' adverse actions. Ponomarenko offers only a generalized argument that "a continuing causal connection exists between the protected activity and the adverse employment action given there can be no reasonable excuse for the adverse treatment which lead [sic] to a constructive discharge." [Doc. 32 at 12.] However, a plaintiff's own belief that the defendant can offer no valid reason for its actions is insufficient to establish causation at the prima facie stage. Moreover, although the Court notes that the alleged incidents of retaliation occurred close in time to Ponomarenko's EEO complaints, the Sixth Circuit has previously held that temporal proximity alone is typically insufficient to establish causation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (citing *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986)). The temporal proximity here is not so suspiciously close as to overcome this general rule. *See Lindsay v. Yates*, 578 F.3d 407, 418-19 (6th Cir. 2009) (causation may be proven through circumstantial evidence of "suspicious timing" where temporal proximity is extremely close; "where the nexus is not 'very close,' [courts] have declined to find a causal connection based on timing alone.") (quoting *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523, 525 (6th Cir. 2008)). The Court thus grants summary judgment to the Postal Service on Ponomarenko's EEO retaliation claims.

However, some of Ponomarenko's arguments in response to the Postal Service suggest that he may be claiming retaliation against his disability accommodation requests, rather than against his EEO activity. *See* Doc. 32 at 1 (describing retaliation against Ponomarenko for requesting disability accommodation as dispositive in this case); *see also Braud v. Cuyahoga Valley Career Center*, No. 1:06CV1059, 2007 WL 2816210 at *1, *13 (N.D. Ohio Sept. 27, 2007) ("Requesting an accommodation is a protected activity.") (citing *Wright v. Comp USA, Inc.*, 352 F.3d 472, 477-78 (1st Cir. 2003)). The Postal Service has moved for summary judgment only on the issue of

Case No. 1:10-CV-563
Gwin, J.

retaliation for prior EEO activity. The Court therefore does not reach the issue of whether Ponomarenko has made out a prima facie case of retaliation for requesting accommodation.

### VI. Ponomarenko's Constructive Discharge Claim

Finally, the Postal Service contends that Ponomarenko has neither exhausted his administrative remedies nor made out a prima facie case of constructive discharge or hostile work environment. [Doc. 31-1 at 24-25.] Ponomarenko does not argue that he listed constructive discharge as a claim in any of his EEO complaints, all of which he lodged before filing notice of his resignation in November 2008. Nor did Ponomarenko later amend any of these EEO complaints to include a constructive discharge claim. Instead, Ponomarenko responds that specific exhaustion of his constructive discharge claim is not required because such claim could be reasonably expected to grow out of his EEO retaliation complaints. He also says he does not bring a hostile work environment claim. [Doc. 32 at 15.]

Ponomarenko's constructive discharge claim is not saved by the "scope of investigation" doctrine, which provides that a plaintiff may bring charges reasonably expected to grow out of the plaintiff's EEO complaint. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002) ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.")). Ponomarenko describes a series of actions taken by Postal Service supervisors, and suggests that these actions led up to his constructive discharge. [Doc. 32 at 8-10.] This argument implies that a specific incident is the grounds for Ponomarenko's claim: that the "last straw" in the series of events forced Ponomarenko's resignation. However, the final incident of retaliation alleged in the EEO complaints that Ponomarenko has

Case No. 1:10-CV-563
Gwin, J.

administratively exhausted occurred in May 2007, a year and a half before Ponomarenko filed notice of his resignation. Though Ponomarenko did not receive a final agency decision on these complaints until after he had resigned, the gap between the incidents alleged and Ponomarenko's resignation is too large to expect a constructive discharge claim to reasonably arise from investigation of those complaints.

Furthermore, that Ponomarenko brought a later EEO retaliation complaint, in March 2008, makes it even less likely that the EEO would have notice of constructive discharge based on the prior EEO complaints in 2007. Because Ponomarenko implies that his constructive discharge resulted from a "final straw" incident, it is the last incident before his resignation that would most reasonably lead to investigation of a constructive discharge claim. Thus, the event from which constructive discharge may most reasonably be inferred was alleged in Ponomarenko's March 2008 EEO complaint, which has not been administratively exhausted.

Finally, the Court notes that, when filing his EEO complaints, Ponomarenko was represented by counsel who could have advised him of the Rehabilitation Act exhaustion requirements. *C.f. Dixon v. Ashcroft*, 392 F.3d at 219 ("Indeed, as this Court recognized long ago, the rationale for the expected scope of investigation test is that charges of discrimination filed with the EEOC often will be prepared by aggrieved lay persons without the assistance of counsel.") Ponomarenko's alleged constructive discharge does not, therefore, fall within the "scope of investigation" exception to the administrative exhaustion requirements. Because the Court finds that Ponomarenko has not exhausted his administrative remedies on a constructive discharge claim, it need not consider whether Ponomarenko sets forth a prima facie case of constructive discharge.

Case No. 1:10-CV-563
Gwin, J.

## VII. Conclusion

For the foregoing reasons, this Court **GRANTS** summary judgment for the Postal Service on Ponomarenko's claims of retaliation for prior EEO activity, leaving any claims of retaliation based on requests for disability accommodation for trial. The Court also **GRANTS** summary judgment for the Postal Service on Ponomarenko's constructive discharge claim.

IT IS SO ORDERED.

Dated: January 4, 2011

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE